UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHELETHA GRANT, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-500 |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**

Pending before the court is defendant JPMorgan Chase, N.A.'s ("JPMC") motion for summary judgment. Dkt. 14. Upon consideration of the motion, response, reply, and applicable law, JPMC's motion for summary judgment is GRANTED.

**I. BACKGROUND**

This is a Family and Medical Leave Act ("FMLA") case. Plaintiff Sheletha Grant began working for JPMC in March 1998 as a bank teller. Dkt. 9 at 1. After ten years of employment, in 2008, Grant requested, and was granted, a lateral transfer to join JPMC's fraud department. *Id.* JPMC's fraud department operates as a call center that handles calls from JPMC's customers. Dkt. 14 at 2-3. To ensure adequate coverage, employees in the fraud department are scheduled to take their two 15-minute breaks and their one 1-hour lunch break at different, staggered, intervals. *Id.* Employees must strictly adhere to their assigned schedules. *Id.*

JPMC contends that Grant began having performance problems in 2008. Dkt. 14 at 2. In a 2008 review of Grant's performance, her supervisor was critical of several aspects of Grant's performance including poor attendance and punctuality. Dkt. 14, Ex.1, at 19-20. Grant also had a couple of unexcused absences in late December of 2008 and another couple of unexcused absences

in January of 2009.  Dkt. 14 at 3.  Around this time, Grant's mother became ill and Grant became her mother's primary caretaker.  Dkt. 15 at 4.

On January 13, 2009, Grant received a verbal warning about her unexcused absences. Dkt. 14, Ex. 3.  JPMC contends that in April of 2009, after Grant's attendance and punctuality problems continued, Grant received an email from her supervisor reminding her of the departmental guideline and noting that she "presently ha[d] (7) occurrences with regard to absences and (2) tardies."  Dkt. 14, Ex. 2.  In late August of 2009, Grant met with her supervisor Leticia Flores who gave Grant a written warning for late arrivals.  Dkt. 15 at 4, Ex. C.  The warning shows a series of late arrivals beginning on July 8, 2009, and ending on August 25, 2009.  Dkt. 15 at 4-5, Ex. C.  It is during this meeting that Flores learned of Grant's eligibility for FMLA.  Dkt. 15 at 5; Ex. D at 78:8–13.

In early October 2009 Grant was approved for FMLA leave.  Dkt. 15 at 5 & Ex. E.  JPMC recognized the intermittent nature of Grant's FMLA leave and noted that it could not "provide the hours, days, or weeks that [would] be counted against [her] FMLA entitlement at [that] time."  *Id*. JPMC also recognized that Grant's FMLA leave "could affect late arrivals and early departures." Dkt. 15 at 5 & Ex. F.  Grant exercised her right to take intermittent FMLA leave on eleven different occasions after October 6, 2009, always taking off the entire day.  Dkt 14 at 6 & Ex. 2 at 4. Although JPMC argues that Grant never used FMLA leave to arrive late to work, to leave early, or to take leave during the middle of her shift, Grant argues that every time she was late returning from lunch or had a late arrival it was because she had to care for mother and that this time was thus FMLA leave.  Dkt. 14, Ex. 2 at 4; Dkt. 15 at 20-21.

On January 13, 2010, JPMC terminated Grant's employment.  Dkt. 15 at 5.  The stated reason for Grant's termination  was "failure to comply with CBRM Attendance Guidelines.  Dkt. 15, Ex. N

2

JPMC advised in the termination letter that this lack of compliance "factored into her poor performance, which ha[s] negatively impacted her adherence." *Id.* JPMC also stated that Grant had an "additional 49 tardies (late arrivals) . . . [and] 2 additional unscheduled absences." *Id.*

Grant filed her original complaint on January 11, 2011, in the 152nd Judicial District Court of Harris County, Texas, alleging discrimination and retaliation in violation of the FMLA. Dkt. 1, Ex. A at 4. The case was then removed to this court on February 9, 2011. Dkt. 1. After filing its answer, JPMC moved for summary judgment on June 1, 2012. Dkt. 14.

## II. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to summary

judgment, and no defense to the motion is required. *Id*. "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting former Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. ANALYSIS

Grant alleges in the sole count of her complaint that JPMC, "unlawfully interfered with, discriminated against, and/or retaliated against Grant in violation" of the FMLA. Dkt. 9 at 3. Grant alleges that JPMC interfered with Grant's FMLA rights by penalizing her adherence score for taking intermittent leave and asking her to limit her personal time. Dkt. 15 at 17-19. Grant also alleges that JPMC discriminated against Grant by terminating her employment because she took FMLA leave. Dkt. 15 at 19. JPMC seeks summary judgment on Grant's FMLA claim, arguing that Grant was given FMLA leave after applying for it, was never denied any FMLA leave that she requested to take, and was never disciplined, criticized, or retaliated against because she took leave. Dkt. 16 at 1-2. JPMC claims that Grant's employment was terminated because she habitually took breaks at times other than she was scheduled to do so, which adversely impacted her work performance, and that Grant's obtaining and using FMLA leave played no part in her poor adherence or termination from employment. *Id.* Grant contends that her late arrivals from lunch and breaks, for which she was terminated, qualified as FMLA leave because she was caring for her mother. Dkt. 18 at 18. JPMC contends that the evidence shows that Grant was not using those late arrivals from breaks and lunches to care for her mother and that, even if she were caring for her mother, those late arrivals would not qualify as FMLA leave because the FMLA does not entitle one to take breaks for as long as one chooses whenever one chooses. Dkt. 16 at 2.

**A.  Interference**

To prevail on an interference claim, a plaintiff "must show 'that (1) she is an eligible employee under the FMLA, (2) the defendant is an employer subject to the requirements of the FMLA, (3) she was entitled to FMLA leave, (4) she gave notice to the defendant of her intention to take FMLA leave, and (5) the defendant denied her the benefits to which, under the FMLA, she was

entitled.'" *Ford-Evans v. Smith*, No. 04-3344, 2007 WL 1795717 (S.D. Tex. June 19, 2007) (citing *Schimek v. MCI, Inc.*, No. 05-0045, 2006 U.S. Dist. LEXIS 54747, *35 (N.D. Tex. Aug. 7, 2006)).

Both parties, for purposes of this motion, agree that Grant satisfied the first four elements of an interference claim. Dkt. 14 at 12; Dkt. 15 at 17-18. Therefore the court will address the fifth element—whether or not JPMC denied Grant the benefits to which, under the FMLA, she was entitled.

Grant contends that JPMC denied her the benefits to which she was entitled because JPMC's adherence policy did not take into account her FMLA leave, and thus, penalized her for taking intermittent leave. Dkt. 15 at 17. JPMC contends, and it is undisputed, that Grant was awarded FMLA leave and that she used her FMLA leave on eleven different occasions in October, November, and December 2009. Dkt. 16 at 2. JPMC further contends that its adherence policy *does* take into account FMLA leave, and that the eleven occasions in which Grant did take FMLA leave were not calculated into her adherence score. *Id.* It is clear to the court, and undisputed, that JPMC approved and awarded FMLA leave to Grant. Dkt. 14 at 5-6; Dkt. 15 at 5.

Grant argues, however, that JPMC does not have a mechanism for factoring FMLA leave into adherence scores, thus penalizing those who use FMLA leave. Dkt. 15 at 13. Grant supports this argument by citing a portion of Flores' deposition stating that the adherence score is calculated daily, and regardless of FMLA status, if an employee is not adhering, the employee's score is affected. *Id.* JPMC however, points out that FMLA is in fact accounted for in adherence scores. Dkt. 16 at 2-3. JPMC cites to the next sentence of the Flores' deposition, where Flores explains that "FMLA leave is recorded as an excused absence, and because excused absences do not factor into adherence, Grant's taking of FMLA leave did not impact her adherence score – positively or negatively." Dkt. 16 at 3; Dkt. 15, Ex. D at 7-8.

6

The court agrees that JPMC's system of calculating adherence scores takes into account FMLA leave in factoring adherence scores. JPMC properly accounted for Grant's FMLA leave the eleven times she took it, and her adherence score was thus not negatively impacted by her FMLA leave.[1] The court thus finds that no reasonable jury could find that JPMC denied Grant the benefits to which, under the FMLA, she was entitled.

**B.    Retaliation**

The first inquiry into a retaliation claim is whether direct evidence of retaliatory motive exists. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). However, in the absence of direct evidence of retaliation, the court applies the *McDonnell-Douglas* burden-shifting framework when analyzing retaliation claims. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001). First, an employee must make a *prima facie* showing of retaliation. *Id.* To make a *prima facie* showing of retaliation under the FMLA, a plaintiff "must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave. *Id.* "If [an employee] succeeds in making a *prima facie* case, the burden shifts to the [employer] to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action." *Id.* "Once the [employer] has done so, [the employee] must show by a preponderance of the evidence that the [employer]'s reason is a pretext for retaliation. *Id.*

It is undisputed that the first two prongs of the *prima facie* burden have been met—Grant was protected by the FMLA and Grant suffered an adverse employment decision. Dkt 14 at 16; Dkt. 15

---

[1] Grant does not explicitly argue that her late lunches and arrivals contributed to a negative adherence score and thus a failure by JPMC to account for FMLA leave. Regardless, the court finds that Grant's late lunches and arrivals did not qualify as FMLA leave.

7

at 19. Therefore, the court will address the third element, whether Grant suffered less favorable treatment than an employee who had not requested FMLA leave or whether the adverse decision was made because Grant took FMLA leave.

Grant contends that she was penalized in her adherence score for numerous late arrivals from breaks and lunches that were FMLA leave, which led directly to her termination, thus satisfying the third element and establishing a *prima facie* showing of retaliation under the FMLA. Dkt. 15 at 19-20. JPMC however, argues that there is not enough evidence to raise a fact issue concerning the third prong of the *prima facie* case. Dkt. 14 at 16. JPMC argues that there is no evidence of animus towards Grant by Flores and that Grant was not treated less favorably because of her FMLA leave. *Id.* at 16-17. JPMC highlights the fact Flores is the one who recommended and helped Grant seek and obtain FMLA leave. *Id.* Further, JPMC contends Grant cannot show that there were other similarly situated employees who were treated more favorably. *Id.* at 17. Moreover, JPMC argues that Grant was not treated differently because she took FMLA leave, but rather, she was treated differently because she was the only employee who failed to adhere to her schedule on 49 or more different occasions. *Id.* As far as Grant's contention that her late arrivals from lunch and unscheduled breaks were due to her ongoing need to care for her mother and thus, legally protected FMLA leave, JPMC argues that Grant has offered no evidence she actually spent that time talking to her mother, and that even if she did, those personal phone calls would not be protected under the FMLA. Dkt. 15 at 6.

The court agrees with JPMC that there is not enough evidence to raise an issue of fact regarding whether Grant was treated less favorably than other employees who did not have FMLA leave or whether her employment was terminated because of her use of FMLA leave. Although Grant argues that her unscheduled breaks and extended lunches were due to her need to care for her mother

and protected under the FMLA, Grant does not cite, and the court has not found, any case law that allows for such leave. And, in fact, the Fifth Circuit has noted that it was "unable to locate a case where 'temporary' FMLA leave was awarded in such a context-where the leave given does not constitute time away from a place of work, but merely periodic time away from a desk throughout the work day." *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 580 (5th Cir. 2006). Although *Mauder* involved FMLA leave for the employee himself and not the care of a family member, the principle is applicable to the case at bar. Thus, the court finds Grant's late arrivals from lunch and breaks, even if they were caused by her need to care for her mother, were not protected FMLA leave. Therefore, the court finds that Grant's termination for failure to adhere to her schedule regarding lunch and breaks and her two unexcused absences was not a violation of the FMLA. Accordingly, JPMC's motion for summary judgment is GRANTED.

### IV. Conclusion

After consideration of the motions, response, reply, and applicable law, JPMC's motion for summary judgment (Dkt. 14) is GRANTED. Grant's claims are hereby DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on November 28, 2012.

_____
Gray H. Miller
United States District Judge